IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                           No. 2:13-cr-3367 RB

JESSIE JESUS MARQUEZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion in Limine and Request for a Pretrial *Daubert* Hearing (Doc. 449) and Defendant's Motion for Pretrial *James* Hearing and for Disclosure of Co-Conspirators' Statements (Doc. 450). The Court held a hearing on these motions and a *James* hearing on January 12, 2016. Having considered the submissions of counsel and relevant law, the Court finds that the motions should be granted in part and denied in part.

**I.    Background**

On October 16, 2013, the Grand Jury returned an Indictment charging Defendant and seventeen co-defendants with crimes relating to methamphetamine distribution from on or about January 31, 2013 to on or about June 12, 2013. Defendant is charged with seven counts: conspiracy to possess with intent to distribute methamphetamine contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846 (Count 1); two counts of possession with intent to distribute methamphetamine and aiding and abetting, in violation of 21 U.S.C. §§

841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Counts 13 and 29); and four counts of use of a communications facility to further the commission of a drug trafficking crime and aiding a abetting, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (Counts 23, 30, 36, and 41).

All of Defendant's co-defendants have pleaded guilty. All of Defendant's co-defendants except one have been sentenced. Defendant is set for jury selection and jury trial beginning on January 25, 2016.

**III.     Discussion**

   **A.     Defendant's Motion in Limine and Request for a Pretrial *Daubert* Hearing**

   **1.     Prior convictions**

Defendant requests a ruling as to whether his prior convictions would be admitted under Federal Rules of Evidence 609 and 403 if he testifies at trial. The Government responds that Defendant's prior convictions for aggravated battery in 2000 and possession of a firearm by a felon in 2008 would be admissible if Defendant testifies.

The admissibility of evidence regarding a witness's prior felony convictions is governed by Rule 609 of the Federal Rules of Evidence, which generally allows the use of prior convictions for the purpose of challenging the witness's credibility, subject to certain requirements set forth in the Rule. *See* Fed. R. Evid. 609(a). Rule 609(a)(2) "makes evidence of prior criminal convictions involving 'an act of dishonesty or false statement' the most readily admissible of all prior convictions, presumably because such evidence is highly relevant for the jury in assessing credibility." *United States v. Jones*, 254 F. App'x 711, 723 (10th Cir. 2007) (unpublished).

In general, evidence of prior felony convictions "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial

effect to that defendant." *See* Fed. R. Evid. 609(a)(1)(B). This "special balancing test" is used because "the defendant faces a unique risk of prejudice — *i.e.*, the danger that convictions that would be excluded under [Rule 404] will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes." *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (quoting Fed. R. Evid. 609, advisory committee's notes (1990 Amendments)).

A different subsection of Rule 609 applies to Defendant's 2000 conviction for aggravated battery because it occurred more than ten years ago. Where a conviction is more than ten years old, Rule 609(b) imposes additional restrictions on its admissibility. "[W]here more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of the conviction is "admissible only if" the following conditions are satisfied: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use. *See* Fed. R. Evid. 609(b)(1) and (2).

Courts have held that convictions more than ten years old are generally inadmissible. *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (Rule 609(b) balancing test creates "predisposition toward exclusion"); *United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979) (citing Fed. R. Evid. 609(b) advisory committee's note ("It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.")).

In this case, Defendant's 2000 conviction for aggravated battery is more than ten years old. The conviction did not involve an element of dishonesty or false statement. While the conviction may have some probative value, the Government had not shown by specific facts that

such value substantially outweighs the prejudicial effect of this evidence. *See* Fed. R. Evid. 609(b)(1). Therefore, evidence of the 2000 conviction for aggravated battery will be excluded.

Defendant's 2008 conviction for possession of a firearm by a felon is governed by Rule 609(a) because it occurred within the last ten years. *See* Fed. R. Evid. 609(a). Rule 609(a) provides that such evidence "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." *See* Fed. R. Evid. 609(a)(1)(B).

In the context of Rule 609(a)(1), the Tenth Circuit has identified the following five factors for consideration: (1) the impeachment value of the defendant's prior crimes; (2) the dates of the convictions and the defendant's subsequent history; (3) the similarity between the past crimes and charged crimes; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility at trial. *See Smalls*, 752 F.3d at 1240.

With regard to the first factor, the crime of possession of a firearm by a felon does not contain an element of truthfulness or veracity, but the crime does call Defendant's truthfulness into question. *See id.* Notably, the crime would put the jury on notice that Defendant had at least one other felony conviction. Regarding the second factor, Defendant's conviction occurred in 2008, which is within the last ten years. With regard to the third factor, the similarity of the past crime to the charged crimes, it is material that the crime is not similar to the charged offenses, but the jury might use the fact that Defendant has at least two prior felonies (the 2008 conviction for possession of a firearm by a felon plus a predicate felony) as propensity evidence. The fourth factor is the "importance of the defendant's testimony." If he testifies, Defendant's testimony will be important. The fifth factor is the "degree to which the defendant's credibility is central to the case." Defendant's credibility will be central at trial as it will contradict the

other evidence. Balancing these factors leads to the conclusion that the fact that Defendant was convicted of a felony in 2008 would be admissible for impeachment purposes. If Defendant testifies, Government may ask Defendant if he was convicted of a felony in 2008 and Defendant may respond "yes" or "no." If Defendant responds in the negative he does so at his peril.

### 2.    Expert testimony

The Government filed notices of intent to offer expert testimony and requested pre-trial rulings as the admissibility of the expert testimony of Drug Enforcement Administration ("DEA") Special Agent Conan Becknell on narcotics trafficking (Doc. 250), and DEA Forensic Chemists Tamara Dallabeta-Keller and Michael M. Brousseau, who tested the methamphetamine which was seized during this case (Doc. 251). The Government included summaries of the anticipated testimony for all three witnesses, curricula vitae for the chemists, and a summary of Special Agent Becknell's experience. (*Id.*) The Government requests that the Court rule without an evidentiary hearing or reserve ruling until the expert testimony is offered at trial as allowed by *United States v. Nichols*, 169 F.3d 1255, 1262–63 (10th Cir. 1999).

> Rule 702 of the Federal Rules of Evidence provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and method to the facts of the case.

Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires a district court to assess proffered expert testimony to ensure it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (scientific knowledge); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

5

141, (1999) (technical and other specialized knowledge). "[T]he district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702). If the expert is sufficiently qualified, then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id.* Although a district court has discretion in how it performs its gatekeeping function, "when faced with a party's objection, [the court] must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). The Court finds that a formal *Daubert* hearing is not necessary. *See Nichols*, 169 F.3d at 1262–63. Based on the materials included with the Government's notices (Docs. 250 and 251), DEA Forensic Chemists Tamara Dallabeta-Keller and Michael M. Brousseau are qualified to testify as experts on forensic chemistry and DEA Special Agent Conan Becknell is qualified to testify as an expert on narcotics trafficking.

At the hearing, Defendant emphasized that he challenges the expert testimony of Special Agent Becknell as to the meaning of code words used by the conspirators in telephone calls and text messages. It is well-established that a law enforcement agent may qualify as an expert under Rule 702 in the area of drug trafficking if his knowledge, skill, or training so permits. *United States v. Roach*, 582 F.3d 1192, 1206–07 (10th Cir. 2009). Indeed, the Tenth Circuit has acknowledged that experience and training are generally the basis upon which experts rely to provide testimony regarding the modus operandi of drug organizations. *See United States v. Garza*, 566 F.3d 1194, 1199–1200 (10th Cir. 2009).

Additionally, experienced law enforcement agents such as Special Agent Becknell are routinely permitted to testify as expert witnesses about the meaning of terms used in the drug trade. *See United States v. Garrett*, 757 F.3d 560, 568–70 (7th Cir. 2014) (holding that expert testimony was permissible concerning common practices in the drug trade and defining "the meaning of certain industry code words"); *United States v. Wilson*, 484 F.3d 267, 568–70 (7th Cir. 2007) (stating that "courts of appeals have routinely held that law enforcement officers with extensive drug experience are qualified to give expert testimony on the meaning of drug-related code words"); *United States v. Feliciano*, 223 F.3d 102, 109, 122 (2d Cir. 2000) (affirming the district court's admission of expert testimony on the terminology of a specific gang); *United States v. Griffith*, 118 F.3d 318, 321–22 (5th Cir. 1997) (holding that experienced narcotics officers may offer expert testimony with respect to "drug traffickers' jargon"); *United States v. Delpit*, 94 F.3d 1134, 1145 (8th Cir. 1996) (holding that an experienced officer was qualified to give expert testimony concerning the "meaning of jargon and codewords" because his experience represented "the best education there is for this type of thing"); *see also United States v. Garcia*, 291 F.3d 127, 139 (2d Cir. 2002) ("Given the attempts of drug dealers to disguise the content of their discussions as legitimate subject matters, courts may allow witnesses to 'decipher' the codes drug dealers use and testify to the true meaning of the conversations."). Consistent with this long-standing jurisprudence, this Court generally allows expert testimony from DEA agents about organizational structure and the use of coded terms in drug trafficking.

As this case involves alleged drug trafficking and recordings and text messages that use coded terminology, the expert testimony of Special Agent Becknell defining the terms is relevant and permissible. Accordingly, the Court will permit Special Agent Becknell to testify as an expert witness concerning the organizational structure of drug organizations and the meaning of

7

code words in the recordings and text messages. Ultimately the jury will decide what the particular code words meant. It bears underscoring that the Court will not allow the expert to profile. Special Agent Becknell will not be permitted to opine that witnesses or Defendant knew about the organization because people at such levels always know about the organization.

### 3. Crawford

Defendant seeks to exclude testimonial statements by alleged co-conspirators unless the declarant is unavailable and defendant has had an opportunity to cross-examine the declarant. *See Crawford v. Washington*, 541 U.S. 36 (2004). The Government responds that the Court should decline to make a ruling until Defendant identifies the challenged statements.

In *Crawford*, the Supreme Court held that the admission at trial of testimonial hearsay would violate the Confrontation Clause unless the declarant testified or, where unavailable, was previously subject to cross-examination by the defendant regarding the objectionable statements. *See Crawford*, 541 U.S. at 68. The Tenth Circuit has indicated that "[a] formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime." *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010). The inquiry "is whether the declarant intends to bear testimony against the accused." *Id.* (citation omitted).

Defendant has not specified the challenged statements. The Court finds that it is not possible to rule on the admissibility of the statements unless they are identified. Defendant may renew the objection at trial.

### B. Defendant's Motion for Pretrial *James* Hearing and for Disclosure of Co-Conspirators' Statements

Defendant requested a *James* hearing to determine the admissibility of co-conspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See generally, United*

*States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917 (1979). The Government concurred with Defendant's request for a *James* hearing and stated that it has disclosed the co-conspirator statements, as well as summaries of the statements, to defense counsel.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Before admitting co-conspirator statements under Rule 801(d)(2)(E), the Court must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the declarant made the statements during the course of and in furtherance of the conspiracy. *See United States v. Thornburgh*, 645 F.3d 1197, 1210 (10th Cir. 2011).

The district court may make these factual determinations using either of two procedures: (1) it may hold a *James* hearing outside the presence of the jury to determine whether the predicate conspiracy existed, or (2) it may provisionally admit the evidence with the caveat that the evidence must "connect up" during trial, i.e., that the party offering the evidence must prove the existence of the predicate conspiracy through trial testimony or other evidence. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). The Tenth Circuit has strongly recommended that, before admitting statements of co-conspirators under Rule 801(d)(2)(E), district courts hold a pretrial hearing to determine whether the alleged conspiracy existed. *See id.; United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007). Following these authorities and the request of the parties, the Court held a *James* hearing on January 12, 2016 and heard the testimony of DEA Special Agent Amy Billhymer.

In making its factual determination as to whether a conspiracy exists, the Court may consider the proffered statements, along with independent evidence tending to establish the conspiracy. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (court may consider co-conspirator statements in determining existence of conspiracy) (*citing Bourjaily v. United States*, 483 U.S. 171 (1987)).  The Tenth Circuit has held that *Bourjaily* requires "at most, there . . . be some independent evidence linking the defendant to the conspiracy." *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987).  Independent evidence need not be substantial to be found sufficient. *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993). A co-conspirator's direct observations and contact with the defendant qualify as independent evidence of a conspiracy. *United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987).  The Court has the discretion to consider any hearsay evidence not subject to privilege, regardless of whether or not that evidence would be admissible at trial. *Owens*, 70 F.3d at 1124.  Summary testimony by a case agent regarding factual statements by a co-conspirator to the agent during an investigation may be considered as independent evidence of a conspiracy. *Id.* at 1125.

At the *James* hearing, Special Agent Billhymer testified that, in January 2013, an informant began making controlled purchases of methamphetamine from Robert Christner in Alamogordo, New Mexico.  The DEA conducted surveillance on Mr. Christner and, on March 14, 2013, obtained court-authorization to intercept Mr. Christner's telephone calls and text messages. Though the wiretap, the DEA discovered that Mr. Christner was distributing methamphetamine to numerous individuals in Alamogordo and Las Cruces, New Mexico. The distributors included Jay Black, Rustan Turner, Cecilia Chavez, John Herrera, Michael Lucero, Carlos Maldonado, Paul McGranahan, Anthony Montoya, Demetrio Stogden, Jasmine

Robertson, Stephanie Taylor, Stephan Morales, and Defendant. (Govt. Ex. 1.)[1] Additionally, Roxann Vasquez was Mr. Christner's girlfriend and Bret Hampton served as Mr. Christner's driver. (*Id.*)

Through intercepted telephone calls and text messages, the DEA determined that Defendant was obtaining ounce-quantities of methamphetamine from Mr. Christner and distributing it to others. For instance, on March 14, 2013, the DEA intercepted a telephone call between Defendant and Mr. Christner during which they discussed the quality of the methamphetamine that Mr. Christner had distributed to Defendant. During other intercepted calls in March 2013, Mr. Christner asked Defendant what his customers thought about the quality of the methamphetamine. Intercepted communications indicated there had been complaints about the quality of some of the methamphetamine from some of the other distributors. Mr. Christner instructed Defendant to stop selling the old methamphetamine and sell the new methamphetamine Mr. Christner had recently provided because the new methamphetamine was better quality.

The DEA learned that Mr. Christner's primary source of methamphetamine was in Arizona. Michele Casillas was the courier for this source. In late March 2013, the DEA learned that Mr. Christner planned to receive a three-pound shipment of methamphetamine from Arizona via Ms. Casillas. Intercepted telephone calls and text messages revealed that Mr. Christner and Ms. Casillas planned to meet in Willcox, Arizona on March 20, 2013. On March 19, 2013, Mr. Christener called Defendant and said Mr. Christner was going to meet his "uncle" in Arizona and indicated he needed to collect money from Defendant to fund the purchase. Defendant replied that he was holding "it" and would meet Mr. Christner later that day.

---

[1] Government's Exhibit 1 is a chart with photos of co-conspirators. Government's Exhibit 2 is a table summarizing the statements the Rule 801(d)(2)(E) statements the Government intends to use at trial. Government's Exhibits 1 and 2 were admitted for purposes of the *James* hearing.

11

On March 20, 2013, Mr. Christner called his source in Arizona. The source told Mr. Christner that "it's going to be three full ones [pounds], two oranges, and eight grapes . . . you know, oranges [are] like O-Z [ounces]? And you know, grapes [are] like . . . the g[ram]s." (Govt. Ex. 2.) Ms. Vazquez and Ms. Robertson accompanied Mr. Christner on the trip. DEA intercepted Mr. Christner's telephone calls and text messages during the trip. DEA arranged for Ms. Casillas to be traffic stopped east of Tucson, Arizona. Ms. Casillas was arrested and the shipment was seized. Mr. Christener was traffic stopped twice in New Mexico, but he was let go at the behest of the DEA. Subsequently, Mr. Christner stopped using his intercepted telephone and obtained a new telephone.

In April 2013, the DEA obtained court-authorization for wiretaps on the new telephone and the telephone of Ms. Vasquez. With the new wiretaps, the DEA learned that Mr. Christner had lost contact with his source in Arizona after Ms. Casillas was arrested. Mr. Christner asked individuals in his organization to find new sources of supply for pound quantities of methamphetamine. The DEA obtained court-authorization to intercept calls and text messages from additional telephones belonging to individuals engaged in the conspiracy.

On April 13, 2013, the DEA learned that Defendant introduced Mr. Christner to a new source of supply for methamphetamine in Anthony, New Mexico. On April 17, 2013, Defendant and Mr. Christner traveled to Anthony to meet with these individuals. On April 17, 2013, Mr. Christner planned to purchase five additional ounces from these individuals and planned to obtain more.

On April 19, 2013, the DEA intercepted a telephone call between Defendant and unknown male during which Defendant tried to obtain methamphetamine on behalf of Mr. Christner at the price of $10,000 per pound. During this same period, Mr. Christner called other

individuals in his drug distribution network, including Mr. Morales, Mr. Black, Mr. Montoya, and let them know he was in the process of obtaining methamphetamine from a new source for distribution.

During surveillance on April 19, 2013, DEA agents observed Defendant pick up Mr. Christner at the Village Inn on Telshor Avenue in Las Cruces, drive him to a meeting with Mr. Morales at the Pic Quik on Telshor to collect money, and drive Mr. Christner to Anthony to purchase methamphetamine. Based on this information, DEA agents were able to identify Defendant and learned from Las Cruces Police that Defendant referred to himself as "the Mexican." Subsequently, the DEA obtained court authorization to intercept Defendant's telephone calls and text messages.

Between May 29 and June 3, 2013, the DEA intercepted telephone calls between Defendant and Mr. Christner during which Defendant sought to obtain an ounce and a half of methamphetamine from Mr. Christner. The DEA also intercepted telephone calls between Defendant and an unknown man discussing Defendant's conversations with Mr. Christner concerning methamphetamine prices and distribution.

In June 2013, the DEA learned that Mr. Christner planned to receive two and a half pounds of methamphetamine from a new source in Arizona. On June 6, 2013, the courier, Jessica Gomez, was arrested as she delivered the methamphetamine. Mr. Christner and Mr. Hampton were also arrested. Mr. Christner agreed to cooperate with the DEA and he was released. A few days thereafter, Mr. Christner was hospitalized with chest pains and he suffered a heart attack. After undergoing heart surgery, Mr. Christner passed away.

On June 13, 2013, the DEA intercepted a telephone call between Defendant and Mr. Hampton during which they discussed Mr. Christner's death and the arrest. Defendant and Mr.

Hampton also discussed Mr. Christner instructions that Mr. Hampton should collect drug debts on behalf of Mr. Christner's family.

Based on the testimony of Agent Billhymer and the statements summarized in Government's Exhibit 2, the Court finds by a preponderance of the evidence that (1) a methamphetamine distribution conspiracy existed, (2) Defendant and the participants in the telephone calls and text messages listed in Government's Exhibit 2 and others were members of conspiracy, and (3) the declarants made the statements during the course of and in furtherance of the conspiracy.

Defendant contends that his role was limited to only a small conspiracy to sell methamphetamine for Mr. Christner and he was not involved in the larger conspiracy to distribute methamphetamine. The Tenth Circuit has acknowledged that "[d]istinguishing between a single, large conspiracy and several smaller conspiracies is often difficult." *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009). Interdependence is the focal point for determining whether a single conspiracy existed. *Id.* at 1329. "Interdependence exists where co-conspirators 'inten[d] to act together for their shared mutual benefit within the scope of the conspiracy charged.' " *Id.* (alteration in original) (quoting *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992)). This requires that "each [coconspirator's] activities 'constituted essential and integral steps toward the realization of a common, illicit goal.' " *United States v. Edwards*, 69 F.3d 419, 431 (10th Cir.1995) (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990)). Interdependence is often proved by circumstantial evidence, *United States v. Hutchinson*, 573 F.3d 1011, 1035 (10th Cir. 2009), and it does not require proof that the conspirators know the identities or details of each scheme or have connections with all other

members of the conspiracy, *United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011) (reviewing a sufficiency challenge for plain error).

In this case, the members of the conspiracy worked together to obtain pound quantities of methamphetamine and distribute methamphetamine in smaller quantities. The co-conspirators worked for the good of the overall organization whether or not they had any individual independent contact with each other outside their relationships with Mr. Christner. The evidence presented at the *James* hearing shows by a preponderance of the evidence that Defendants and the declarants shared the single criminal objective of distributing methamphetamine. The statements summarized in Government's Exhibit 2 were made by members of the conspiracy during the course of and in furtherance of the conspiracy. Thus, these statements are admissible under Rule 801(d)(2)(E).

## IV.   Conclusion

Evidence of Defendant's 2000 conviction for aggravated battery is inadmissible. Evidence that Defendant has a 2008 felony conviction is admissible for impeachment purposes; the Government may ask Defendant if he was convicted of a felony in 2008 and Defendant may respond "yes" or "no." If Defendant responds in the negative, the Government may cross examine him to establish that the 2008 conviction was for the crime of possession of a firearm by a felon. DEA Forensic Chemists Tamara Dallabeta-Keller and Michael M. Brousseau are qualified to testify as experts on forensic chemistry. DEA Special Agent Conan Becknell is qualified to testify as an expert on narcotics trafficking, including the use of code words and terminology. Defendant may renew any *Crawford* objections at trial. The statements summarized in Government's Exhibit 2 are co-conspirator statements admissible under Rule 801(d)(2)(E).

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion in Limine and Request for a Pretrial *Daubert* Hearing and Defendant's Motion for Pretrial *James* Hearing and for Disclosure of Co-Conspirators' Statements are **GRANTED IN PART AND DENIED IN PART.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**